UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JOSEPH WHITE,                          )
                                       )
                 Plaintiff,            )          Case No. 1:13-cv-532
                                       )
v.                                     )          Honorable Phillip J. Green
                                       )
COMMISSIONER OF                        )
SOCIAL SECURITY,                       )          **OPINION**
                                       )
                 Defendant.            )
_____)

        This is a social security action brought under 42 U.S.C. § 1383(c)(3) seeking review

of a final decision of the Commissioner of Social Security denying plaintiff's claim for supplemental

security income (SSI) benefits.  On March 26, 2008, plaintiff filed his application for benefits,[1]

alleging a May 1, 2003, onset of disability.   (A.R. 169-71).  He later amended his claim to allege

an August 6, 2008, onset of disability.[2]  (A.R. 53).  Plaintiff's claim for SSI benefits was denied on

_____

        [1]March 26, 2008, is the protective filing date.  "Protective filing date" is the term used for
the first time an individual contacts the Social Security Administration about filing for benefits. *See*
http:// www.ssa.gov/glossary.htm (last visited Oct. 2, 2014).  A protective filing date allows an
individual to have an earlier application date than the date the signed application is actually filed.
*Id.*

        [2]SSI benefits are not awarded retroactively for months prior to the application for benefits.
20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also
Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month in
which SSI benefits are payable is the month after the application for SSI benefits is filed.  Thus,
April 2008 would have been plaintiff's earliest possible entitlement to SSI benefits.  However, he
now alleges that August 6, 2008, the date he reached age 50, was his onset of disability.

initial review.[3]  (A.R. 87-90).  On October 29, 2012, plaintiff received a hearing before an administrative law judge (ALJ), at which he was represented by counsel.  (A.R. 29-64).  On December 4, 2012, the ALJ issued a decision finding that plaintiff was not disabled.  (A.R. 14-23).  The Appeals Council denied review on April 24, 2013 (A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision.  Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties voluntarily consented to have a United States magistrate judge conduct all further proceedings in this case, including entry of final judgment.  (docket # 10).  Plaintiff argues that the Commissioner's decision should be overturned on the following grounds:

1.    The ALJ failed to give controlling weight to the opinions of his treating physician, Minerva Galang,[4] M.D.; and

2.    The ALJ's factual finding regarding plaintiff's residual functional capacity (RFC) did not accurately portray plaintiff's "physical and mental impairments and concentration limitations."

(Plf. Brief at 10, 13).  The Commissioner's decision will be affirmed.

---

[3]On June 28, 2012, the Appeals Council vacated an earlier decision by a different ALJ.  (*see* A.R. 83-85; *see also* A.R. 70-78).

[4]All briefs filed in this case erroneously refer to Dr. Galang as Dr. "Galand."  This error is understandable given that there are no records of treatment provided by Dr. Galang, and in the few places her signature appears in the record, it is not easily deciphered.  (*see e.g.*, A.R. 449, 481).  It is mentioned in this footnote for the purpose of clarity.  The administrative record contains no medical records from anyone named "Dr. Galand."

**Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he

Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## <u>Discussion</u>

The ALJ found that plaintiff had not engaged in substantial gainful activity on or after the application date, March 26, 2008. (A.R. 16). Plaintiff had the following severe impairments: "human immunodeficiency virus (HIV) and hepatitis C infections and a bipolar disorder." (A.R. 16). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 17). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform only less than a full range of light work as defined in 20 CFR 416.967(b) except that he is limited to the performance of unskilled and entry-level jobs.

(A.R. 19). The ALJ found that plaintiff's subjective complaints were not fully credible. (A.R. 19-22). Plaintiff was unable to perform any past relevant work. (A.R. 22). Plaintiff was 49-years-old on the date that he filed his application for SSI benefits. He was classified as a younger individual at all times before August 6, 2008. On and after August 6, 2008, plaintiff was classified as an individual closely approaching advanced age. (A.R. 22). Plaintiff has at least a high school education and is able to communicate in English. (A.R. 22). The ALJ found that the transferability of job skills was not material to a determination of disability. (A.R. 22). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person

-4-

of plaintiff's age, and with his RFC, education, and work experience, the VE testified that there were approximately 41,500 jobs in Michigan that the hypothetical person would be capable of performing. (A.R. 56-60). The ALJ found that this constituted a significant number of jobs. Using Rule 202.20 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff was not disabled.[5] (A.R. 22-23).

## 1.

Plaintiff argues that the ALJ committed reversible error when he failed to give controlling weight to the opinion of a treating physician, Minerva Galang, M.D. The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. § 416.927(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). A treating physician's opinion that a patient is disabled is not entitled to any special significance. *See* 20 C.F.R. §§ 416.927(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician."). Likewise, "no special significance"[6] is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment because they are administrative issues reserved to the

---

[5]The ALJ's opinion should have included a citation to Rule 202.13 because it was the applicable rule after plaintiff reached age 50. He could have dispensed with the discussion of Rule 202.20 altogether, because plaintiff abandoned any claim of an onset of disability before he reached age 50. Nonetheless, the ALJ's failure to cite Rule 202.13 was harmless, because when Rule 202.13 is used as a framework, it supports the ALJ's finding that plaintiff was not disabled.

[6]"We will not give any special significance to the source of an opinion on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section." 20 C.F.R. § 416.927(d)(3).

Commissioner.  20 C.F.R. §§ 416.927(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

   Generally, the medical opinions of treating physicians are given substantial, if not controlling deference.  *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011).  "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician.  Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'"  *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)).  A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 416.927(c)(2).  The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation."  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).  An opinion that is based on the claimant's reporting of his symptoms is not entitled to controlling weight.  *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

   Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of

factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. § 416.927(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 661 F.3d 931, 937-38 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Gayheart v. Commissioner*, 710 F.3d at 376.

The medical record in this case is not extensive, but a brief review of it is necessary to place plaintiff's arguments in context. Plaintiff was not hospitalized for any medical condition during the period at issue: August 6, 2008, his amended alleged onset of disability date, through December 4, 2012, the date of the ALJ's decision. Plaintiff has no history of psychiatric hospitalization. (A.R. 496). He does have "a long history of substance abuse and has faced legal consequences associated with his drug-related activities." (A.R. 408). Plaintiff has been "off and on in prison for a total of 17 years." (A.R. 408, 411). When a psychologist asked plaintiff to estimate the total time he had been in jail, his response was, "I can't even give you an estimate, I've been there so much."[7] (A.R. 420). Plaintiff's substance abuse history includes cocaine, marijuana, acid, pain and relaxation pills, and alcohol. (A.R. 409, 496). He "has been in rehab four times."

_____

[7] Plaintiff is generally not eligible to receive social security benefits for any months he was confined in a jail or prison. *See* 42 U.S.C. §1382(e)(1)(A); 20 C.F.R. § 416.1325.

(A.R. 496). He was terminated from his most recent employment because "they could smell alcohol on [his] breath at work." (A.R. 419). He continued to consume alcohol and smoke marijuana during the period that he claims to have been disabled. (A.R. 410, 413-14, 420, 435-37, 439, 445, 468, 475, 483). Alcohol and marijuana are plaintiff's primary drugs of choice, with cocaine being a secondary choice. (A.R. 439). The record is replete with medical advice that plaintiff should stop drinking alcohol. (A.R. 446). Plaintiff has responded that he "drinks every night at least six 40-ounce" beers to sleep. He says he cannot sleep without the alcohol." (A.R. 445). "He has come to believe that alcohol is a medication that he needs to alleviate stomach problems and to help him stay relaxed." (A.R. 413). Alternatively, plaintiff reports, "I need the beer because of the medications. I need that. The medications dry me out."[8] (A.R. 421).

A month before his amended alleged onset of disability date, plaintiff received a consultative examination performed by Psychologist Robert Baird. (A.R. 362-67). Plaintiff had no history of psychiatric hospitalization. He stated that he experienced periods of depression that ranged in duration from four or five days to six months. He indicated that during these periods he did "a lot of self-medicating" with drugs and alcohol. (A.R. 363). Plaintiff reported that he continued to consume alcohol and use illegal drugs:

> In regard to history of substance use, Claimant reports that he began experimenting with alcohol and marijuana when he was a teenager. He currently consumes three to four 40

---

[8]Since 1996, the Social Security Act, as amended, has precluded awards of SSI benefits based upon alcoholism and drug addiction. *See* 42 U.S.C. § 1382c(a)(3)(J); 20 C.F.R. § 416.935; *see also Bartley v. Barnhart*, 117 F. App'x 993, 998 (6th Cir. 2004); *Hopkins v. Commissioner*, 96 F. App'x 393, 395 (6th Cir. 2004). The claimant bears the burden of demonstrating that substance abuse was not a factor contributing to his disability. *See Cage v. Commissioner*, 692 F.3d 118, 122-25 (2d Cir. 2012); *see also Zarlengo v. Barnhart*, 96 F. App'x 987, 989-90 (6th Cir. 2004). Because plaintiff was found not to be disabled, the ALJ was not required to decide the issue of whether substance abuse was material to a finding of disability. *See Gayheart v. Commissioner*, 710 F.3d at 380.

ounce beers on a daily basis and will consume a "dime bag" approximately three times per week.  Claimant reports he began experimenting with crack cocaine in the 1990s and his last use occurred two weeks prior to this current review.  He quantified his consumption as "as much as I could get" on a daily basis.

(A.R. 363).  Psychologist Baird offered a diagnosis of cocaine abuse, cannabis abuse, alcohol abuse, and a major depressive disorder, severe, without psychotic features.  (A.R. 365).

On August 6, 2008, plaintiff received a consultative physical examination performed by R. Scott Lazzara, M.D.  Plaintiff related that he had a history of drug and alcohol abuse and stated that the "occasionally" had a drink to control his pain.  (A.R. 391).  Plaintiff told Dr. Lazzara that he had stopped working his last job "because his hands were locking up on him."  (A.R. 391).  He did not disclose that his employment had ben terminated because he had been found with alcohol on his breath at work.  (A.R. 419).  Dr. Lazzara found no evidence of carpal tunnel disease or joint destruction.  (A.R. 393).  Plaintiff's motor strength was normal.  He did not have any difficulty performing orthopedic maneuvers and did not require an assistive device.  Plaintiff had HIV and hepatitis C.  There were no clinical findings of AIDS.  Plaintiff's weight was stable.  There were no findings of end stage liver disease.  Dr. Lazzara wrote: "Unfortunately, he does use alcohol to control his symptoms which will only aggravate his hepatitis."  (A.R. 393).

On November 3, 2008, Dhanu Mahesh, M.D., performed a consultative psychiatric examination.  (A.R. 445-46).  Plaintiff reported that he drank "at least six 40-ounce" beers every night to help him sleep and he used marijuana at least once a week.  (A.R. 445).  Plaintiff reported that he had been in prison four times and had just completed his parole.  Plaintiff stated that he had "skin crawling feelings" when he was experiencing withdrawal from alcohol, and he reported nightmares and flashbacks from traumatic prison experiences.  Based on plaintiff's statements, Dr. Mahesh offered a diagnosis of bipolar affective disorder, PTSD, substance abuse disorder, alcohol

dependence, and antisocial personality.  Dr. Mahesh approved prescriptions for Remeron and Risperdal.  He encouraged plaintiff to stop drinking and indicated that plaintiff would likely need to be involved in a substance abuse program as well.  (A.R. 446).

Plaintiff received treatment at the Family Outreach Center.  On March 25, 2009, he met with an intake therapist.  (A.R. 408-15).  He stated that every time he secured a good job he would get in trouble, go to prison, and lose the job.  (A.R. 409).  He indicated that he was drinking 30 beers each day and that he would drink a fifth of liquor on weekends.  He reported that he last used marijuana in 1995.  He stated that he smoked a pack of cigarettes per day.  (A.R. 410).  In other portions of the initial evaluation, plaintiff reported that he had stopped using illegal substances and only drank "a couple of beers once in a while."  (A.R. 416).  The intake therapist at Family Outreach offered a diagnosis of bipolar disorder and alcohol dependence.  (A.R. 413).

On May 14, 2009, plaintiff related to Psychiatrist Mohammad Irfan, M.D., at Family Outreach that he was currently "laid off and being supported by FIA."  (A.R. 416).  Plaintiff stated that he had been diagnosed as bipolar and that the Navane and Remeron that he had been taking made him feel "more stable."  (A.R. 416).  Plaintiff gave an extensive history of drug and alcohol abuse.  He continued to consume alcohol, but reported that he had "been clean" of drug abuse for about a year.  (A.R. 416).  Dr. Irfan offered a diagnosis of bipolar disorder, most recent episode mixed, and gave plaintiff a prescriptions for a 30-day supply of Navane and Remeron, with no refills.  (A.R. 416-18).

On August 28, 2010, plaintiff received a consultative examination performed by Psychologist James Lozer.  (A.R. 419-26).  Plaintiff stated that he continued to consume alcohol because "medications dry me out."  (A.R. 421).  He stated that he had  "quite a few associates," with

-10-

whom he had contact on a daily basis, and they were able to get along "OK." (A.R. 421). He stated that his current interests were travel, cooking, singing, and writing short stories or novels. He indicated that he could not currently afford to travel. He stated that he cooked, sang, and danced in his apartment on a daily basis. (A.R. 422). Plaintiff was in contact with reality. His IQ appeared to be average. He denied hallucinations and delusions. (A.R. 422). Psychologist Lozer offered a diagnosis of bipolar disorder, NOS, post traumatic disorder, and suspected alcohol dependence. (A.R. 424). Lozer expressed his opinion that from a psychological standpoint, plaintiff would be able to engage in full time gainful employment. He suspected that plaintiff's alcohol consumption was "greater than the half a beer per day he report[ed] consuming." (A.R. 425). He noted that plaintiff was "fired from his last job for having alcohol on his breath." (A.R. 425).

On September 30, 2010, plaintiff went to Family Outreach and met with Psychiatrist Leonard Vander Linde, M.D. (A.R. 495). Dr. Vander Linde found that plaintiff was stable on his medication regimen. His sleep was good and his thoughts were organized. Plaintiff indicated that he had no side effects from medication. Vander Linde found that plaintiff was "alert, cooperative and animated." His "mood was euthymic and his affects [were] appropriate to his concerns and somewhat upbeat." His speech was fluent. His thoughts were linear and goal directed, without evidence of delusions or suicidal ideation. He denied any hallucinatory phenomena. His memory and cognition appeared to be grossly intact. (A.R. 495).

Plaintiff returned to the Family Outreach on March 15, 2011, and he met with Psychiatrist Bobga Formunung, M.D. (A.R. 494). Plaintiff stated that he had no suicidal or homicidal ideation and was "quite pleased with his status." He did not experience any side effects from his medications. Dr. Formunung offered a diagnosis of bipolar disorder, not otherwise

-11-

specified.  (A.R. 493).  Dr. Formunung gave the same diagnosis on May 24 and August 9, 2011.

He noted that plaintiff was "doing quite well on his medication without any concerns or questions."

(A.R. 492-93).

The earliest St. Mary's Health Care progress notes generated during the period at

issue are dated April 11, 2011.[9]  Nurse Practitioner Edna Estrella recorded that plaintiff was 6 feet

2 inches tall and he weighed 185 pounds.  He had a body mass index (BMI) of 24.  (A.R. 460).

Plaintiff stated that he was doing well on his medications.  His muscle strength was 5/5 in all

extremities.  His recent and remote memory were intact and he was oriented in all three spheres.

(A.R. 461).  Plaintiff was advised regarding the adverse impact his alcohol abuse was having on his

liver.  Nurse Estrella described plaintiff's HIV as "stable on meds."  (A.R. 461).  No side effects

from medication were noted during this, or any other visit, that plaintiff had with Nurse Estrella.

On November 11, 2011, plaintiff returned to St. Mary's.  His HIV infection remained "stable on

meds."  (A.R. 458).  He was described as being well nourished, well developed, and in no acute

distress.  His muscle strength and psychological condition remained unchanged.  (A.R. 458).

On February 29, 2012, plaintiff reported to Nurse Estrella that he had "many

psychosocial concerns which prevented him from working."  (A.R. 455).  Ms. Estrella described

plaintiff's medical condition as "stable."  (A.R. 456).  The "exception to normal finding" was

plaintiff's alcohol addiction. (A.R. 456).  Nurse Estrella discussed alcohol abstinence with plaintiff.

(A.R. 456).  On June 15, 2012, plaintiff reported to Ms. Estrella that he as "feeling well" and

"denied HIV related issues."   (A.R. 452).  Nurse Estrella found that plaintiff's recent and remote

---

[9]The record contains some records from St. Mary's dated before August 8, 2008. (A.R. 317-61).

memory were intact.  He was alert and oriented in all three spheres and his mood and affect were normal.  His muscle strength was "5/5 on all extremities."  (A.R. 453).  Estrella indicated that plaintiff was stable on medication.  She discussed "alcohol abstinence" with plaintiff.  (A.R. 453).

On August 22, 2012, Dr. Galang completed a medical report stating that plaintiff had HIV and HIV wasting syndrome, but she found that plaintiff had none of the other conditions listed, including diarrhea.  (A.R. 447-49, 478-80).  Dr. Galang offered no opinions suggesting that plaintiff's mental or physical impairments prevented him from working.  (*Id.*).

On August 22, 2012, Nurse Estrella completed a one-page RFC questionnaire for plaintiff's attorney.  She offered her opinion that plaintiff had extreme restrictions which prevented him from "engag[ing] in gainful employment."  (A.R. 450).  She stated that HIV "causes cognitive impairment" and that "HIV medications have side effects."  She also stated that plaintiff "has chronic wasting syndrome that exacerbates his body aches."  (A.R. 450).

Plaintiff's administrative hearing was held on October 29, 2012.  The exhibits he presented to the ALJ did not include any RFC questionnaire completed by Dr. Galang.  (*see* A.R. 31-32).  Dr. Galang was not even mentioned during the hearing.  (A.R. 29-64).  The administrative hearing concluded at 12:02 p.m.  (A.R. 64).  Later that afternoon, Dr. Galang's signature and the date were added to the form that Nurse Estrella had completed more than two months earlier, and someone faxed it to plaintiff's attorney's office.  (A.R. 481).  Dr. Galang offered no explanations and made no notations on the RFC questionnaire identifying the medical evidence supporting the conclusions that Nurse Estrella had supplied.  (A.R. 450, 481).  The ALJ found that opinions appearing on the RFC questionnaire were entitled to little weight because they were not supported

by the underlying treatment notes and were contrary to the extensive daily activities that plaintiff

had reported:

> Medical personnel with St. Mary's Health Care have offered the opinion that the claimant is unable to engage in gainful employment (Exhibits 12F/4 and 14F/4). The St. Mary's Health Care personnel, however, have provided no objective medical findings to support their conclusion. Rather, St. Mary's Health Care office treatment records of June 2012 reveal that the claimant was "feeling well." He had no significant HIV-related issues. His physical examination was within normal limits. His weight was recorded at 178 pounds (Exhibit 13F/2-3). As discussed above, the claimant's daily activities are varied and representative of an ability to do sustained work. Because the conclusions at Exhibits 12F/4 and 14F/4 [are] not consistent with the objective record and the claimant's daily activities, the undersigned gives little weight to the conclusion.

(A.R. 21). The conclusion that plaintiff was unable to work was entitled to no weight because the

issue of disability is reserved to the Commissioner. 20 C.F.R. §§ 416.927(d)(1), (3). The other

restrictions that Nurse Estrella suggested in her RFC questionnaire responses were undermined by

her own progress notes.[10]  Estrella was plaintiff's primary contact at St. Mary's. (A.R. 452-77).

Plaintiff referred to her as his "case manger." (A.R. 51). There is no evidence in the record that

plaintiff has ever seen Dr. Galang. Even assuming that Dr. Galang was a treating physician,[11] the

---

[10]A nurse practitioner is not an "acceptable medical source." See 20 C.F.R. § 416.913(a), (d); *see also Turner v. Astrue*, 390 F. App'x 581, 586 (7th Cir. 2010). Only "acceptable medical sources" can: (1) provide evidence establishing the existence of a medically determinable impairment; (2) provide a medical opinion; and (3) be considered a treating source whose medical opinion could be entitled to controlling weight under the treating physician rule. *See Titles II and XVI: Considering Opinions and Other Evidence from Sources Who are not 'Acceptable Medical Sources' in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies*, SSR 06-3p (reprinted at 2006 WL 2329939, at * 2 (SSA Aug. 9, 2006)). The opinions of a nurse practitioner fall within the category of information provided by "other sources." *Id.* at * 2; *see* 20 C.F.R. § 416.913(d). The social security regulations require that information from other sources be "considered." 2006 WL 2329939, at * 1, 4. This is not a demanding standard, and it was easily met here.

[11]A single visit does not suffice to establish a treating physician relationship. *Kornecky v. Commissioner*, 167 F. App'x 496, 507 (6th Cir. 2006). "Indeed, depending on the circumstances and the nature of the alleged condition, two or three visits often will not suffice for an ongoing

restrictions suggested in the RFC questionnaire completed by Nurse Estrella are not well supported by objective evidence and are inconsistent with all the underlying treatment records from St. Mary's. The court finds no violation of the treating physician rule and that the ALJ gave good reasons for the weight he gave to the opinions found in the RFC questionnaires.

Plaintiff makes a passing assertion that the ALJ "failed in his duty" under SSR 96-5p to recontact Dr. Galang.  (Plf. Brief at 11).  This argument is undeveloped and patently meritless. In *Ferguson v. Commissioner*, 628 F.3d 269 (6th Cir. 2010), the Sixth Circuit held that there were "two conditions that must both be met to trigger SSR 96-5p's duty to recontact:  'the evidence does not support a treating source's opinion ... and the adjudicator cannot ascertain the basis of the opinion from the record.'"  *Id.* at 273 (quoting 1996 WL 374183, at * 6).  An unsupported opinion alone does not trigger the duty to recontact.  *Ferguson*, 628 F.3d at 273.  SSR 96-5p's duty is not triggered where, as here, the ALJ did not reject the physician's opinions because they were unclear to him, but instead he rejected the opinions because they were based on plaintiff's subjective complaints and were not supported by objective medical evidence.  *Ferguson*, 628 F.3d at 273. "'[A]n ALJ is required to re-contact a treating physician only when the information received is inadequate to reach a determination on claimant's disability status, not where, as here, the ALJ rejects the limitations recommended by that physician.'"  *Ferguson*, 628 F.3d at 274 (quoting *Poe*

treatment relationship."  *Id.*

Even assuming that progress notes documenting treatment provided by Dr. Galang exist, plaintiff could not withhold those treatment records and then claim entitlement to the benefit of the treating physician rule.  *See Landsaw v. Secretary of Health & Human Servs.*, 803 F.2d 211, 213-14 (6th Cir. 1986); *see also Weeks v. Shalala*, No. 94-5948, 1995 WL 521156, at * 3 (6th Cir. Sept. 1, 1995).

*v. Commissioner*, 342 F. App'x 149, 156 n. 3 (6th Cir. 2009)).  Where the duty is not triggered, it is not violated.  *Ferguson*, 628 F.3d at 274.

## 2.

Plaintiff argues that the ALJ's factual finding regarding his credibility is not supported by substantial evidence.  (Plf. Brief at 14).  Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ.  *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987).  The court does not make its own credibility determinations.  *See Walters v. Commissioner*, 127 F.3d at 528.  The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ."  *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005).  The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the "substantial evidence" standard.  This is a "highly deferential standard of review."  *Ulman v. Commissioner*, 693 F.3d 709, 714 (6th Cir.  2012).  "Claimants challenging the ALJ's credibility determination face an uphill battle."  *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005); *see Ritchie v. Commissioner*, 540 F. App'x 508, 511 (6th Cir. 2013) ("We have held that an administrative law judge's credibility findings are 'virtually unchallengeable.'").  "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying."  *Jones*, 336 F.3d at 476.  "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge h[is] subjective complaints." *Buxton v. Halter*,

-16-

246 F.3d at 773; *accord White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).

The ALJ found that plaintiff's testimony regarding the intensity, persistence, and limiting effects of his impairments was not fully credible.  (A.R. 19-22).  The ALJ noted that plaintiff had testified that he was unable to work because he had been bipolar his entire life.  Plaintiff stated that fatigue would prevent him from walking more than a block and he gave similarly low estimates regarding his abilities to stand, sit, and lift.  (A.R. 20; *see* A.R. 36-37, 42).  The ALJ found that plaintiff's medical records did not support the level of limitation that he claimed, and that his daily activities further undermined his testimony:

> The claimant has required only conservative treatment for his allegedly disabling impairments.  He has been prescribed medication and counseling for his bipolar disorder and medication for his HIV.
>
> The claimant testified that his bipolar medication helps to control that condition; that although he has had hepatitis C since 1997, he takes no medication for that condition; and that his HIV, which he has had since 1997, is controlled with medication.  His medications have been set forth at Exhibit 14E.
>
> The medical reports substantiate that the claimant's bipolar disorder and HIV are adequately controlled with medication.  St. Mary's Health Care office notes of April 2011 through June 2012 show that the claimant is doing well when he is on his medications (Exhibit 13F/3-10).  Family Outreach Center records of August 2012 also disclose that the claimant was doing well with his current medications.  The claimant additionally reported to his counselors that he had been stable because of his ongoing medication regimen (Exhibit 15F/1, 5).
>
> The claimant has alleged that his medications result in disabling side effects.  The overall record, however, does not support this allegation.  Indeed, the claimant's contentions of disabling fatigue, diarrhea, and a burning sensation in his feet as side effects are less than fully credible because of inadequate evidence to support the existence of these symptoms to the degree that they would be disabling.  Moreover, physical and clinical examinations do not substantiate the claimants alleged symptoms to the disabling degree that he has alleged (Exhibits 13F and 15F).
>
> The claimant's daily activities reflect that he would be capable of performing light exertional activities upon a sustained basis.  As mentioned previously, he is able to cook, clean his

> apartment, do the laundry, attend weekly church services, use public transportation, go shopping, go bike riding, take walks, do volunteer work, watch television, socialize at least once a month, listen to music, read, handle financial matters, and take care of his personal needs (Testimony and Exhibits 5E, 13E, and 15F/1-2).
>
> During the course of the hearing, the undersigned had the opportunity to observe the claimant. He was able to sit comfortably throughout the proceedings, presented a calm demeanor, good hygiene, and a good memory, and displayed no evidence of pain or discomfort in his facial expression or vocalization. Indeed, he was able to arise easily from his chair and walk easily from the hearing room at the close of the hearing.

(A.R. 20). The ALJ was entirely correct that plaintiff's treatment records did not support his claims that he suffered from disabling symptoms, including significant side effects of his medication. It was appropriate for the ALJ to take plaintiff's daily activities into account in making his credibility determination. *See Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007); *Blacha v. Secretary of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston v. Commissioner*, 245 F.3d at 534. The ALJ's factual finding regarding plaintiff's credibility is supported by more than substantial evidence.

-18-

**3.**

Plaintiff argues that the ALJ's factual finding regarding his RFC did not accurately portray his physical and mental impairments and concentration limitations.  (Plf. Brief at 13).  He argues that the ALJ's factual finding regarding his RFC was deficient because the ALJ's opinion "never mention[ed] claimant's frequency of treatment," and the opinion did not satisfy the narrative discussion component of SSR 96-8p.  (Plf. Brief at 15-16).

 RFC is an administrative finding of fact reserved to the Commissioner.  20 C.F.R. § 416.927(d)(2), (3).  RFC is the most, not the least, a claimant can do despite his impairments.  20 C.F.R. § 416.945(a); *see Branon v. Commissioner*, 539 F. App'x 675, 677 n.3 (6th Cir. 2013); *Griffeth v. Commissioner*, 217 F. App'x 425, 429 (6th Cir. 2007); *see also Policy Interpretation Ruling Titles II & XVI:  Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8p (S.S.A. July 2, 1996) (reprinted at 1996 WL 374184, at * 1, 2, 4).  The ALJ considered the appropriate factors specified in 20 C.F.R. §§ 416.945 and SSR 96-8p when he made his factual finding regarding plaintiff's RFC:

> Before considering step four of the sequential evaluation process, the undersigned must first determine the claimant's residual functional capacity (20 CFR 416.920(e)).  An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.  In making this finding, the undersigned must consider all the claimant's impairments, including impairments that are not severe (20 CFR 416.920(e) and 416.945; SSR 96-8p).

(A.R. 15-16).  Plaintiff states that the ALJ's opinion "never mentioned the frequency of treatment." (Plf. Brief at 15).  This argument does not provide a basis for disturbing the Commissioner's decision.  The absence of discussion of a factor does not mean that it was not considered.  *See Delgado v. Commissioner*, 30 F. App'x 542, 547-48 (6th Cir. 2002); *accord White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009); *Brown v. Commissioner*, No. 1:10-cv-705, 2012 WL 951556, at

-19-

* 5 (W.D. Mich. Feb. 27, 2012) (collecting cases). Further, the ALJ's consideration of the frequency of treatment by various medical care providers is reflected in his accurate summary of the medical evidence. Plaintiff makes a passing argument that the ALJ's opinion failed to satisfy the narrative discussion component of SSR 96-8p. (Plf. Brief at 16). The court finds that the ALJ's narrative (A.R. 20-22) was sufficient. *See Payne v. Commissioner*, 402 F. App'x 109, 116-18 (6th Cir. 2010); *see also* SSR 96-8p, 1996 WL 374184, at * 7. The ALJ found that plaintiff retained the RFC for light , unskilled, entry-level jobs. (A.R. 19). The court finds that the ALJ's factual finding regarding plaintiff's RFC is supported by more than substantial evidence.

## 4.

Plaintiff argues that the ALJ's hypothetical question failed to accurately portray the his concentration limitations. (Plf. Brief at 15). This is a mere reformulation of plaintiff's attacks on the ALJ's factual findings regarding his credibility and RFC. It is well settled that a hypothetical question to a VE need not include unsubstantiated limitations. *See Carrelli v. Commissioner*, 390 F. App'x 429, 438 (6th Cir. 2010); *Gant v. Commissioner*, 372 F. App'x 582, 585 (6th Cir. 2010) ("[I]n formulating a hypothetical question, an ALJ is only required to incorporate those limitations which he has deemed credible."). The ALJ's hypothetical question included all the limitations he found to be credible.

**5.**

Near then end of his brief, plaintiff provides a series of stream-of-consciousness arguments which are not well developed or supported by legal authority:

> There ought to be some articulation of the findings of an ALJ as related to the severe impairments. There are none in this case. This is even after the Appeals Council remanded the decision with directions to factor the mental limitations into the RFC determination. (T.r. 83). ALJ Ogden points to no medical records for his assertions. Every conclusion the ALJ draws are [sic] not based on substantial evidence but on his own personal feelings towards Plaintiff. The decision is based on cherry picking of the medical evidence and not on substantial evidence. The decision by the ALJ is clearly a one-sided argument that is not based in fact.

* * *

> The ALJ ignored the Appeals Council order, and further never mentions that the claimant was awarded disability from the State of Michigan. While the ALJ does not have to follow the State of Michigan conclusion that the claimant is disabled, it would certainly be persuasive on the Court [sic] and ought to have been mentioned by the ALJ. Finally, the directions that were given by the Appeals Council were completely ignored by the ALJ and ought to have been followed.

(Plf. Brief at 14-15). These perfunctory arguments are deemed waived. *See Clemente v. Vaslo*, 679 F.3d 482, 497 (6th Cir. 2012); *see also Moore v. Commissioner*, No. 13-6654, __ F. App'x __, 2014 WL 3843791, at * 3 (6th Cir. Aug. 5, 2014).

Even assuming that the arguments had not been waived, they are patently meritless.

A.    <u>Appeals Council</u>

Plaintiff argues that the ALJ did not comply with the Appeals Council's order remanding this case for further administrative proceedings. The scope of this court's review does not encompass whether the ALJ complied with the Appeals Council's order. The scope of judicial review is defined by statute:

-21-

The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.

42 U.S.C. § 1383(c)(3). Section 405(g) limits judicial review to the Commissioner's final administrative decision:

Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. . . . The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive ....

42 U.S.C. § 405(g). It is well established that an order from the Appeals Council remanding a matter for further proceedings is not a final administrative decision. *See Weeks v. Social Security Admin.*, 230 F.3d 6 (6th Cir. 2000) (*per curiam*); *Duda v. Secretary of Health & Human Servs.*, 834 F.2d 554, 555 (6th Cir. 1987) (*per curiam*). Whether the ALJ complied with the Appeals Council's order of remand is "an internal agency matter which arises prior to the issuance of the agency's final decision." *Brown v. Commissioner*, No. 1:08-cv-183, 2009 WL 465708, at * 6 (W.D. Mich. Feb.24, 2009). "[T]his court's review is limited to an analysis of the ALJ's decision and not a review of the ALJ's compliance with the Appeals Council's Order of Remand." *Peterson v. Commissioner*, No. 09-11222, 2010 WL 420000, at * 7 (E.D. Mich. Jan. 29, 2010). Further, "By failing to remand the matter [in its most recent decision], it appears the Appeals Council considered the ALJ's [decision] to be in compliance with the Council's previous order of remand. Section 405(g) does not provide this court with authority to review intermediate agency decisions that occur during the administrative review process." *Brown v. Commissioner*, 2009 WL 465708, at * 6.

B.    Cherry Picking

-22-

Plaintiff accuses the ALJ of "cherry picking" the record. This argument is frequently made and seldom successful, because "the same process can be described more neutrally as weighing the evidence." *White v. Commissioner*, 572 F.3d 272, 284 (6th Cir. 2009). The narrow scope of judicial review of the Commissioner's final administrative decision does not include re-weighing evidence. *See Ulman v. Commissioner*, 693 F.3d at 713; *Bass v. Mahon*, 499 F.3d at 509. The court finds that the ALJ's opinion provides an accurate summary of the administrative record.

C.   Disability Under Michigan Law

Plaintiff states that he was awarded disability under Michigan law and that the ALJ should have mentioned that fact in his opinion. (Plf. Brief at 15). Plaintiff provides no citation to the supporting portion of the record, because there is none. Defendant is correct that the administrative record in this case does not contain any decision from the State of Michigan finding that plaintiff was disabled.[12] (Def. Brief at 8). Plaintiff's argument is meritless.

D.   Bias

Plaintiff's conclusory statement that every finding made by the ALJ is "not based on substantial evidence but on his own personal feelings towards Plaintiff" does not approach the proof of actual bias necessary to overcome the presumption that the ALJ was impartial. The ALJ is presumed to have exercised his powers with honesty and integrity, and the plaintiff has the burden

---

[12]There is no need to discuss how a decision made under Michigan law is considered in the context of a claim for social security benefits, *see e.g.*, *Sanders v. Commissioner*, No. 1:08-cv-1136, 2010 WL 1132286, at * 7-8 (W.D. Mich. Mar. 3, 2010), because this administrative record contains no finding of disability under Michigan law.

of overcoming the presumption of impartiality "with convincing evidence that a risk of actual bias or prejudgment is present." *Collier v. Commissioner*, 108 F. App'x 358, 364 (6th Cir. 2004) (citing *Schweiker v. McClure*, 456 U.S. 188, 196 (1982), and *Navistar Int'l Transp. Corp v. EPA*, 941 F.2d 1339, 1360 (6th Cir. 1991)); *see Bailey v. Commissioner*, 413 F. App'x 853, 856 (6th Cir. 2011) ("We presume that judicial and quasijudicial officers, including ALJs, carry out their duties fairly and impartially."). Plaintiff has the burden of providing "convincing evidence that a risk of actual bias or prejudgment is present." *See Bailey*, 413 F. App'x at 856; *see Collier*, 108 F. App'x at 364. For the alleged bias to be disqualifying, it must "stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966); *see Miller v. Barnhart*, 211 F. App'x 303, 305 n.1 (5th Cir. 2006). "[A]ny alleged prejudice on the part of the decisionmaker must be evident from the record and cannot be based on speculation or inference." *Carrelli v. Commissioner*, 390 F. App'x 429, 436-37 (6th Cir. 2010); *see Perschka v. Commissioner*, 411 F. App'x 781, 788 (6th Cir. 2010) ("An adverse ruling alone is not enough to support a finding of bias."). "[E]xpressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display" are insufficient to establish bias. *Liteky v. United States*, 510 U.S. 540, 555-56 (1994). The court finds no evidence that the ALJ was biased against plaintiff, much less the convincing evidence of actual bias that is necessary to overcome the presumption of impartiality.

### Conclusion

For the reasons set forth herein, the Commissioner's decision will be affirmed.


Dated:   October 3, 2014          /s/  Phillip J. Green
                                   United States Magistrate Judge